UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CIV. NO. 13-2688 (DWF/JSM)

MEE HER,

REPORT AND RECOMMENDATION

     Plaintiff,

v.

WELLS FARGO BANK, N.A., et.al.

     Defendants.

This matter came before the undersigned on defendant's Motion to Dismiss [Docket No. 11].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local Rule 72.1, and the Amended Administrative Order issued by Chief Judge Michael Davis on October 16, 2013 [Docket No. 10].  Pursuant to this Court's Order of October 23, 2013 [Docket No. 17], this matter was decided on the parties' written submissions.

Plaintiff seeks to invalidate the foreclosure of the mortgage on her home.  Plaintiff asserts three claims against defendant Wells Fargo Bank, N.A. ("Wells Fargo"): (1) quiet title to determine adverse claims under Minn. Stat. §599.01; (2) declaratory judgment; and (3) slander of title.  For the reasons below, the Court recommends that defendant's[1] Motion to Dismiss be granted and plaintiff's claims be dismissed with prejudice.

---

[1]    In the caption of her Complaint, plaintiff also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court recommends that all claims against them be dismissed.  See Sonsalla v. Mortgage Elec. Registration Sys., Inc., Civ. No. 13-659 (JRT/JSM), 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995)

I.    **BACKGROUND**

On or about September 10, 2013, plaintiff sued Wells Fargo in state court. Notice of Removal, Ex. A (Summons and Complaint) [Docket No. 1-1].  Wells Fargo removed the suit to Federal District Court on September 30, 2013, pursuant to 28 U.S.C. §1332(a).  Notice of Removal [Docket No. 1].  The facts bearing on the motion to dismiss are as follows.  On November 7, 2005, plaintiff entered into a Note and Mortgage ("Mortgage") with GreenPoint Mortgage Funding, Inc. ("GreenPoint") for property located in Saint Paul, Minnesota ("Property").  Complaint, ¶1, 4 [Docket No. 1-1].  Mortgage Electronic Registration System, Inc. ("MERS") was the nominee for GreenPoint.  Id., ¶4.  Plaintiff specifically denied that the named defendant or its predecessor in interest had the legal right to declare a default on the note.  Id., ¶5.  Plaintiff pled that she "did not borrow money from the named Defendant."  Id.

GreenPoint and Wells Fargo's predecessors in interest securitized the mortgage loan into a mortgage-backed security trust entitled "GreenPoint Mortgage Funding Trust 2006-AR3, Mortgage Pass-Through Certificates, Series 2600-AR3" ("GreenPoint Trust") Id., ¶6.  The securitization process was governed by a Pooling and Service Agreement ("PSA") and a Mortgage Loan Purchase Agreement.  Id.  The PSA required that the parties to the securitization documents create and deliver documents creating a complete chain of title from the loan originator to the legal owner of the mortgage loan. Id., ¶7.  According to plaintiff, the PSA required assignments of mortgage prepared and delivered to and from the following entities: (1) from EMC Mortgage Corporation to

---

(affirming dismissal of unidentified defendants about whom no factual allegations were made)).

Structured Asset Mortgage Investments II, Inc. ("SAMI II"); and (2) from SAMI II to Wells Fargo.  Id., ¶8.  The PSA provided that the rights of the parties to the PSA were governed by New York law, and that pursuant to Wells Fargo Bank, N.A. v. Erobobo, 972 N.Y.S.2d 147 (N.Y. Sup. Ct. 2013), if a trust asset is not actually transferred into a trust in accordance with the terms and timing indicated by the trust, then the trust's claim to that asset is void.  Id., ¶¶10-16.  New York law further holds that every sale, conveyance, or other act of the trustee in contravention of the trust is void.  Id., ¶16.

On July 31, 2012, Kelly McWilliams, a Vice President of MERS, executed an Assignment of Mortgage, which assigned the mortgage from MERS to Wells Fargo, as trustee for SAMI II and the GreenPoint Trust.  Id., ¶24, Ex. 4 (Assignment of Mortgage).  The Assignment was recorded in the Ramsey County Recorder's office on August 14, 2012.  Id.  When McWilliams signed the Assignment of Mortgage, she was employed by Nationwide Title Clearing ("NTC").  Id.

On October 12, 2012, Brian Liebo signed a Notice of Pendency regarding the Property.  Id., ¶25, Ex. 5 (October 12, 2012 Notice of Pendency).  When he signed the Notice of Pendency, Leibo was a partner at the Usset, Weingarden & Liebo law firm.  Id.  The Notice of Pendency was recorded in the Ramsey County Recorder's office on October 19, 2012.  Id.  The first date of publication of the Notice of Foreclosure Sale was November 1, 2012.  Id., ¶28, Ex. 7 (Sheriff's Certificate of Sale and Foreclosure Record, CM/ECF p. 74, publications).  On November 30, 2012, Sara DeRose signed a Notice of Pendency & Power of Attorney to Foreclose as Vice President of Wells Fargo.  Id., ¶26, Ex. 6 (November 30, 2012 Notice of Pendency and Power of Attorney to Foreclose).  The Notice of Pendency & Power of Attorney to Foreclose authorized the

Usset, Weingarden & Liebo law firm to foreclose on the mortgage by advertisement and "to do any and all other things necessary . . . for the foreclosure of the above-described mortgage." <u>Id.</u>  The Notice of Pendency & Power of Attorney to Foreclose Mortgage was recorded in the Ramsey County Recorder's office on December 7, 2012. <u>Id.</u>

A sheriff's sale of the Property was conducted on February 14, 2012. <u>Id.</u>, ¶28. Wells Fargo appeared at the sale and bid the amount allegedly due on the note, $166,434.35. <u>Id.</u>, Ex. 7 (Sheriff's Certificate of Sale and Foreclosure Record).  Plaintiff specifically denied that Wells Fargo had the right to exercise the power of sale in the mortgage or held the note on the date of the sheriff's sale. <u>Id.</u>

The Complaint alleged that the Office of the Comptroller of Currency and Wells Fargo entered into a Consent Order on April 13, 2011, in which Wells Fargo was found to have engaged in "unsafe and unsound" banking practices in conducting foreclosures. <u>Id.</u>, ¶29.  In connection with the Consent Order, MERS revoked the authority to initiate foreclosures in MERS's name after July 22, 2011. <u>Id.</u>, ¶32.

Plaintiff alleged that the foreclosure was void because the Assignment of Mortgage from MERS to Wells Fargo violated the terms of the securitization documents and New York law, "which required execution and delivery of all assignments of mortgage prior to April 28, 2006." <u>Id.</u>, ¶35.  Alternatively, if the terms of the PSA were followed, the foreclosure is void because the PSA required that Wells Fargo certify receipt of assignments of mortgage, and those assignments were not recorded before the foreclosure. <u>Id.</u>, ¶36.

Plaintiff further alleged that the foreclosure was void for the following reasons: (1) there was no of-record Power of Attorney authorizing NTC (<u>i.e.</u> Kelly McWilliams, an

NTC employee) to signed the Assignment of Mortgage in violation of Minn. Stat. §§580.05, 507.413 and 582.25(2); (2) the October 12, 2012 Notice of Pendency signed by Liebo was void because there is no of-record Power of Attorney authorizing Usset, Weingarden and Liebo to sign the Notice of Pendency; and (3) the November 30, 2012 Notice of Pendency & Power of Attorney to Foreclose was void because it was executed and recorded after the first date of publication of the Notice of Foreclosure on November 1, 2012, in violation of Minn. Stat. §§580.032; 582.25(1)(e) and 582.25(22) Id., ¶37.

Plaintiff pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq. This Count alleged that in a quiet title action, defendant has the burden of proof, and consequently, defendant must prove its interest in the Property by a preponderance of evidence. Id., ¶¶39-48.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.02 that "[Wells Fargo's] interest in the Property and/or Mortgage is void," the foreclosure is void, and that plaintiff remained the fee owner of the Property. Id., ¶¶50, 51.

Count III alleged slander of title based on defendant's drafting and recording of documents[2] that plaintiff claimed were false and not executed by legally authorized persons, which evidenced a reckless disregard for the truth and that created a cloud on plaintiff's title to the Property. Id., ¶¶53-55.

---

[2]   The Complaint does not identify these documents, but the Court assumed plaintiff was referring to the Assignment of Mortgage signed by McWilliams, the Notice of Pendency signed by Liebo and the Notice of Pendency & Power of Attorney signed by DeRose.

As relief, plaintiff sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Mortgage, Sheriff's Certificate of Sale, Assignment of Mortgage, and Notice of Pendency and Power of Attorney were void; and an order that plaintiff is the fee owner of the Property. Complaint, Prayer for Relief, ¶¶I, II.

Wells Fargo moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's Memorandum of Law in Support of Motion ("Def's Mem."), pp. 4-18 [Docket No. 13]. As to plaintiff's quiet title claim, Wells Fargo contended that plaintiff was simply wrong that all she needed assert was that she was in possession of the Property and that defendant claimed an adverse interest. Id., pp. 5-7. According to Wells Fargo, this "burden shifting" argument has been rejected by every court to consider it. Defendant's Reply Memorandum ("Def's. Reply"), pp. 3-4 [Docket No. 19]. Wells Fargo also argued that it had full authority to foreclose because it was the mortgagee of record. Def's. Mem., pp. 7-8. Wells Fargo asserted that plaintiff's theory that there are unrecorded assignments of the Mortgage was purely speculative and unrecorded assignments cannot be inferred on the basis of securitization contracts. Def's. Reply, p. 6. Further, plaintiff's claim that Wells Fargo could not purchase the Property at the sheriff's sale because it was not the "lawful holder of the note," (Complaint, ¶28), was frivolous and contrary to Eighth Circuit precedent, which has uniformly rejected plaintiff's former counsel's the "show me the note" theory[3] on which this claim is based. Def's Mem., p. 7-8.

---

[3]    This theory has been propounded in the past by plaintiff's former attorney, William Butler. Butler was suspended from practice before the United States Court of Appeals for the Eighth Circuit on December 26, 2013. In re Butler, No. 13–9013 (8th

Wells Fargo spurned plaintiff's theory that the foreclosure was invalid because McWilliams was an employee of NTC and not MERS and, therefore, lacked authority to sign the Assignment on MERS's behalf.  Id., pp. 9-10.  Wells Fargo characterized this as another "standard Butler theory" that has been unanimously rejected by the courts in this District to consider the argument.  Id., p. 9-10.

Wells Fargo also maintained that plaintiff's reliance on the PSA to invalidate the foreclosure should be rejected, arguing that plaintiff could not invoke the PSA or New York trust law to void the foreclosure.  Id., pp. 11-13.  Wells Fargo noted that plaintiff never established that her loan was securitized and made subject to a PSA.  Id., p. 10-11.  But even if it was, plaintiff's claims still failed because she was not a party to the PSA and as such, she has no standing to invoke the provisions of the PSA, and the validity of the foreclosure had to be determined based on Minnesota's foreclosure-by-advertisement statute, not New York trust law.  Id., p. 12.

As to plaintiff's arguments regarding the lack of "of record" power of attorney authorizing McWilliams to execute the Assignment of Mortgage, Wells Fargo contended that this did not render the Assignment void.  Id., pp. 14-15.

Wells Fargo maintained that plaintiff's claims regarding the timing of the recording of Notice of Pendency failed for two reasons.  First, the first Notice of Pendency dated October 12, 2012, was recorded on October 19, 2012 and the first publication of the Notice of Foreclosure took place on November 1, 2014.  See Complaint, Ex. 7 (Sheriff's Certificate of Sale and Foreclosure Record, CM/ECF p. 74,

---

Cir. Dec. 26, 2013).  As a result, Butler was automatically suspended from practice before the District Court, effective December 26, 2013. See D. Minn. L.R. 83.6(b)(1); In re Butler, Misc. No. 13–49(MJD), ECF No. 10 (D. Minn. Jan. 14, 2014).  Plaintiff is currently unrepresented by counsel.

publications).  Therefore, the October 12, 2012 Notice was timely under Minn. Stat. §580.032, subd. 3, which requires that the Notice of Pendency be filed before the first publication of the foreclosure notice.  Def's. Mem., p. 15.

Second, to the extent that plaintiff was arguing that the second Notice of Pendency & Power of Attorney, which was recorded on December 7, 2012, was untimely, Wells Fargo submitted that the claim failed because the Eighth Circuit has concluded that a homeowner cannot challenge a foreclosure based on Minn. Stat. §580.032, the statute that requires a Notice of Pendency to be recorded before the date of the first publication of a foreclosure notice.  Id., pp. 16-17 (citing Badrawi v. Wells Fargo Home Mortg., Inc., 718 F.3d 756 (8th Cir. 2013)).  Finally, the other statutes on which plaintiff relied—Minn. Stat. §§582.25(1)(e)[4] and 582.25(22) —do not describe the requirements for a foreclosure-by-advertisement.  Id., pp. 17-18.  Instead, these provisions describe the one-year statute of limitations for challenges to a foreclosure sale.  Id.

Wells Fargo did not make any separate arguments regarding plaintiff's slander of title or declaratory judgment causes of action, but merely noted that plaintiff's causes of action depended on overlapping theories that have been universally discredited in this District.  Id., p. 4.

---

[4]     Wells Fargo referenced Minn. Stat. §582.25(1)(v) in its brief.  Def. Mem., pp. 17, 18.  There is no such provision in Minn. Stat. §582.25.  The Court presumes that Wells Fargo was citing Minn. Stat. §582.25(1)(e), which is the provision plaintiff cited in her Complaint, ¶37(c).

## II.   LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 677 (quoting Twombly, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, .

. . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n. 4 (8th Cir. 2003).

For the reasons set forth below, the Court concludes that plaintiff failed to state a claim for relief and therefore, Wells Fargo's motion should be granted.

## III.   DISCUSSION

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

In response to Wells Fargo's motion to dismiss the quiet title claim, plaintiff contended that under Minnesota law she only had to plead that she possessed the Property and defendant had a claim adverse to her.[5]   Memorandum in Opposition to Motion to Dismiss ("Pl. Opp. Mem."), pp. 6-10.   According to plaintiff, once these elements are pled, the burden shifted to defendant to prove the validity of its claim.   Id., pp. 8-10.   Moreover, plaintiff maintained the Federal Rules of Civil Procedure do not alter the burden of proof of her state law quit title claim.   Id., p. 6.

Plaintiff further contended that her quiet title claim was viable because if Wells Fargo was relying on the recorded Assignment of Mortgage and Notice of Pendency,

---

[5]   The Minnesota Court of Appeals has rejected plaintiff's argument that a quiet title claim premised solely on allegations that she was in possession of the Property and defendant had a claim adverse to her states a cause of action under Minnesota law.   In a case similar to the instant suit and relying on the standards for pleading articulated in Twombly, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid.   Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss.   We disagree.
>
> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)].   Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013), rev. denied (Mar. 18, 2014).

then by failing to deliver these documents into the trust by the trust's closing date of April 28, 2006, the trust's claim to the Mortgage was void under New York law. Id., pp. 10-11. In the alternative, plaintiff maintained that even if Wells Fargo had followed the PSA requirements, the foreclosure was void because Wells Fargo failed to record the all of the assignments of mortgage before the commencement of the foreclosure by advertisement as required by Minn. Stat. § 580.02. Id., pp. 11-16.

Plaintiff also asserted that the foreclosure was void pursuant to Minn. Stat. §§580.32 and 582.25, subd. 22 because the operative Notice of Pendency & Power of Attorney was recorded on December 7, 2012, which was after the first notice of publication of the sale. Id., pp. 17-20.

Finally, plaintiff claimed that she does have standing to challenge Wells Fargo's interest in the Mortgage. Id., p. 21.

Plaintiff's arguments fail for many reasons.

First, plaintiff's argument that the Court should apply the Minnesota state court pleading standards to her quiet title claim is meritless. Plaintiff's former counsel Butler has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. J.P. Morgan Chase Bank, N.A., 704 F.3d 545 548 (8th Cir. 2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No.

13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in <u>Karnatcheva</u> rejected the "burden of proof" argument in a quiet title action advocated by plaintiff. 704 F.3d at 548. As the court explained in <u>Gharwal</u>:

> <u>Karnatcheva</u> rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim. <u>Karnatcheva</u>, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; <u>Karnatcheva</u> is binding precedent, and this Court must apply it. The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." <u>Welk v. GMAC Mortg., LLC</u>, 850 F. Supp.2d 976, 988 (D. Minn. 2012), <u>aff'd</u>, 720 F.3d 736 (8th Cir. 2013). Here, plaintiff's quiet title claims are based only on conclusory statements and speculation, but no facts. The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiff's quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, mere allegations of a plaintiff's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief. <u>See</u> <u>Karnatcheva</u>, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that

transfers affecting payees and assignments of the notes were invalid."); <u>Yang Mee Thao-Xiong v. American Mortg. Corp.</u>, Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting <u>Novak v. JP Morgan Chase Bank, N.A.</u>, Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), <u>aff'd</u>, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

The documents referenced in and attached to the Complaint show an unbroken chain of title documented through a recorded Assignment of Mortgage from MERS to Wells Fargo as Trustee for SAMI II, GreenPoint Mortgage Funding Trust 2006-AR3, Mortgage Pass Through Certificates, Series 2006-AR3.  Complaint, Exs. 4 (July 31, 2012, Assignment of Mortgage, recorded on August 14, 2012),  7 (Sheriff's Certificate of Sale and Foreclosure Record).  Thus, not only is there no factual support for plaintiff's bald assertions regarding unrecorded assignments, the record shows the exact opposite—there were no unrecorded assignments of the Mortgage and the foreclosure was proper.

Third, plaintiff's assertion that Wells Fargo failed to deliver to the trust several unrecorded assignments of mortgage is without merit.  This Court has previously noted that documents governing mortgage-backed trusts often do not require a chain of written mortgage assignments when, as here, MERS is named the nominee for the lender and is listed as the Mortgagee (Complaint, Ex. 1, Mortgage).  <u>See</u> <u>Wolff v. Bank of New York Mellon</u>, --F. Supp.2d--, Civ. No. 13-2175 (PJS/JSM), 2014 WL 641510, at *12, n. 4 (D. Minn. Feb. 19, 2014) (citing <u>Wollmering v. JPMorgan Chase Bank, N.A.</u>,

No. A12–1926, 2013 WL 3779217, at *5 (Minn. Ct. App. July 22, 2013) ("Appellants argue that the Wollmering and Bakke/Fink mortgages were parts of trusts that required mortgage assignments according to the trust terms and that '[t]he trust documents are therefore evidence of the unrecorded assignments.' Section 2.01 of the PSAs does require that Structured Asset deposit with JPMorgan Chase the original mortgage. But under the express language of the PSAs, the requirement that Structured Asset deposit a certified copy of the assignment of the mortgage to JPMorgan Chase applies 'unless the Mortgage Loan is a MOM loan,' and a Mom Loan is defined as '[w]ith respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.'   Thus, Structured Asset was not required to deposit certified copies of assignments of the Wollmering and Bakke/Fink mortgages, which named MERS as mortgagee as nominee for the originator and its successors, and the trust documents are not evidence of unrecorded assignments.")); Colton v. U.S. Nat. Bank Ass'n, Civ. No. 3:12-3584-D, 2013 WL 1934560, at *4 (N.D. Tex. May 10, 2013) ("[I]t is reasonable that the PSA would not require that a MERS-designated mortgage loan be assigned to U.S. Bank to evidence transfer of ownership to the Trust.  The purpose of MERS is to avoid the task of preparing and recording separate assignments for each mortgage conveyance.") (citing MERS: The Mortgage Electronic Registration System, 63 Consumer Fin. L.Q. Rep. 262, 263 (2009)).

Fourth, even if the Assignment of Mortgage was required to be delivered to the trust, New York law does not void Wells Fargo's interest in the Mortgage.   The Complaint cited Erobobo, 972 N.Y.S.2d 147, at *8-9 (Complaint, ¶16), in which the court

concluded that the transfer of an assignment of a mortgage into a trust in violation of the terms of the PSA—made 18 months after the trust had "closed" and had not been assigned in by the depositor—rendered the assignment void under New York law. However, the majority of courts to examine Erobobo have criticized the decision and held that under New York law, an assignment of a mortgage into a trust in violation of the terms of the PSA is voidable, and not void, as the action can be ratified by the beneficiaries.  See, e.g., Butler v. Deutsche Bank Trust Co. Amer., --F.3d--, Civ. No. 21-2108, 2014 WL 1328296, at *10, n. 8 (1st Cir. April 4, 2014) ("[T]he vast majority of courts to consider the issue have rejected Erobobo's reasoning, that despite the express terms of N.Y. Est. Powers & Trust Laws §7-2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable) (citations omitted); Felder v. Countrywide Home Loans, Civ. No. H–13–0282, 2013 WL 6805843, at *19 (S.D. Tex. Dec. 20, 2013) (quoting Green v. Bank of Amer. N.A., Civ. No. H–13–1092, 2013 WL 3937070, at *3 (S.D. Tex. July 30, 2013), citing Mooney v. Madden, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993)) ("'Courts applying New York law have treated actions by trustees as voidable.'"); Halacy v. Wells Fargo Bank, N.A., Civ. No. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013) (citing Koufos v. U.S. Bank N.A., 939 F. Supp.2d 40, 49 n. 5, 56 n. 2 (D. Mass. 2013) (criticizing Erobobo and finding that a "non-PSA-compliant" transaction is typically "voidable," rather than "void" under New York law)); Deutsche Bank Nat. Trust Co. v. Adolfo, Civ. No. 12-C-759, 2013 WL 4552407, at *3 (N.D. Ill. Aug. 28, 2013) ("we are persuaded by the courts that have held that a transfer that does not comply with a PSA is voidable, not void.") (citations omitted); Calderon v. Bank of America N.A., 941 F.

16

Supp.2d 75, 7663 (W.D. Tex. 2013) (finding that New York Courts have held that a beneficiary can ratify a trustee's <u>ultra</u> <u>vires</u>, and if an act may be ratified, it is voidable rather than void) (citing <u>Mooney v. Madden</u>, 193 A.D.2d 933, 597 N.Y.S.2d 775 (1993); <u>Matter of Estate of Janes</u>, 165 Misc.2d 743, 630 N.Y.S.2d 472, 477 (Sur. 1995), <u>aff'd as modified sub nom.</u>, <u>Matter of Janes</u>, 223 A.D.2d 20, 643 N.Y.S.2d 972 (1996), <u>aff'd sub nom.</u>, <u>Matter of Estate of Janes</u>, 90 N.Y.2d 41, 659 N.Y.S.2d 165, 681 N.E.2d 332 (N.Y. 1997); <u>Leasing Serv. Corp. v. Vita Italian Restaurant</u>, 171 A.D.2d 926, 566 N.Y.S.2d 796, 797-98 (1991); <u>Hine v. Huntington</u>, 118 A.D. 585, 103 N.Y.S. 535, 540 (1907); 106 N.Y. Jur.2d Trusts § 431 ("[T]rustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's <u>ultra</u> <u>vires</u> act or agreement.")) (citations omitted).

Fifth, plaintiff's conclusory claim that "documents" were "not executed by legally authorized persons," (Complaint, ¶53), "do[es] not hold up to even the slightest scrutiny."  <u>Simmer v. HSBC Bank</u>, Civ. No. 13-1549 (DSD/AJB) 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiff's allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); <u>Segura v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-531(SRN/JJK), 2013 WL 3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing <u>Mine v. Federal Home Loan Mortg. Corp.</u>, Civ. No. 13–220, 2013

WL 2443852, at *4 (D. Minn. June 5, 2013); <u>Welk v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn. May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway.  But there are no facts of any kind—no evidence pled supporting these allegations.").

Additionally, even if the PSA applied to plaintiff's mortgage or there was any truth to plaintiff's speculative statements about the lack of signing authority of McWilliams (as to the July 31, 2012 Assignment of Mortgage), Liebo (as to the October 12, 2012 Notice of Pendency), or DeRose (as to the December 7, 2012 Notice of Pendency & Power of Attorney to Foreclose), plaintiff suffered no injury in fact as a result and, therefore lacks standing to pursue a quiet title claim on this basis.  <u>See</u> <u>Novak</u>, 2012 WL 3638513, at *6, <u>aff'd</u>, 518 F. App'x 498 (8th Cir. 2013) (dismissing plaintiff's complaint with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); <u>Karnatcheva</u>, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.")

(internal citations omitted); <u>Wolff</u>, 2014 WL 641510, at *1 ("The Eighth Circuit has held that parties in plaintiffs' position do not have standing to raise this type of argument."); <u>Sorem</u>, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); <u>Quale v. Aurora Loan Services, LLC</u>, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the Assignment of Mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); <u>Forseth v. Bank of Am., N.A.</u>, Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore

have no standing to pursue   claims.") (citations omitted); <u>Kaylor v. Bank of Am., N.A.</u>, Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); <u>Stinson v. U.S. Bank, N.A.</u>, Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); <u>Greene v. Home Loan Servs., Inc.</u>, Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

Sixth, plaintiff's argument that the foreclosure is void pursuant to Minn. Stat. §§ 580.05, 507.413, and 582.25(2), (Complaint, ¶37; Pl. Opp. Mem., p. 12), because there is no "of record" evidence of the individuals' power to execute the Assignment of Mortgage or the October 12, 2012 Notice of Pendency, finds no support in the law.

To foreclose a mortgage by advertisement, the foreclosing party must meet the mandatory requirements prescribed by the foreclosure by advertisement statutes. <u>Jackson v. Mortgage Electronic Registration Systems, Inc.</u>, 770 N.W.2d 487, 495 (Minn. 2009).  In this regard:

Section 580.02 contains three requirements that must be met before a mortgagee can foreclose by advertisement:

(1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

(2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage
...
(3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded....

Id. at 496 (quoting Minn. Stat. §580.02).

Minn. Stat. §580.05 governs the recording of powers of attorney to conduct foreclosure proceedings. It provides:

When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. §580.05.

Minn. Stat. §507.413 states:

(a)     An assignment, satisfaction, release, or power of attorney to foreclose is entitled to be recorded in the office of the county recorder or filed with the registrar of titles and is sufficient to assign, satisfy, release, or authorize the foreclosure of a mortgage if:

(1) a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns;

(2) a subsequent assignment, satisfaction, release of the mortgage, or power of attorney to foreclose the

21

> mortgage, is executed by the mortgagee or the third
> party, its successors or assigns; and
>
> (3) the assignment, satisfaction, release, or power of
> attorney to foreclose is in recordable form. . . . .

Called "the MERS statute," Minn. Stat. §507.413 is a recording statute that creates no obligations and does not change the requirements of the foreclosure by advertisement statute; "rather, it uses recording to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title." Jackson, 770 N.W.2d at 494 (citation omitted).

Minn. Stat. §582.25(2) states in relevant part:

> Every mortgage foreclosure sale by advertisement in this
> state under power of sale contained in any mortgage duly
> executed and recorded in the office of the county recorder or
> registered with the registrar of titles of the proper county of
> this state, together with the record of such foreclosure sale,
> is, after expiration of the period specified in section 582.27,[6]
> hereby legalized and made valid and effective to all intents
> and purposes, as against any or all of the following
> objections:
>
> ***
>
> (2) that no power of attorney to foreclose such mortgage as
> provided in section 580.05, was ever given, or recorded, or
> registered; . . .

Reading all of these statutes together, it is evident that there is no legal requirement that the origin of an individual's or entity's "authority" to assign a mortgage

---

[6]     Minn. Stat. §582.27, subd. 1(a)(2) states:

> Upon expiration of the periods specified in this section, the
> provisions of section 582.25 apply to a mortgage foreclosure
> sale subject to this section:
>
> (2) as to clause (2), ten years after the date of the
> foreclosure sale; and

or to file a Notice of Pendency must be recorded in order to render the foreclosure of a mortgage valid.

For starters, "[s]ection 580.02 is strictly construed, and a foreclosing party must demonstrate "exact compliance" with the statute's requirements." Beecroft v. Deutsche Bank Nat. Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App. 2011), rev. denied (July 19, 2011) (quoting Jackson, 770 N.W.2d at 494). "Absent strict compliance with section 580.02, the foreclosure proceeding is void." Id. (citing Jackson, 770 N.W.2d at 494).

Further, "[t]he purpose of the statutory recording requirements is to ensure that a mortgagor has notice and an opportunity to redeem." Id. (citing Jackson, 770 N.W.2d at 495). Therefore, "the plain language of section 580.02 requires only that the mortgage and any assignment of the mortgage be recorded to entitle a mortgage assignee to foreclose by advertisement," and nothing more. Id.

There is nothing in Minn. Stat. §§507.413, 580.02, 580.05 or in any other statute that requires that the recording of the source of the authority to execute an assignment of mortgage or the authority to execute foreclosure-related documents by an attorney-in-fact. See Beecroft, 798 N.W.2d at 83 ("Indeed, Minnesota courts have recognized that the power to execute an assignment by an attorney in fact need not be recorded to satisfy the foreclosure-by-advertisement statute."); at 84 ("Applying the plain language of section 580.02, we conclude that there is no requirement to record the instruments authorizing Citi Residential to act as Ameriquest's attorney in fact for mortgage assignments and memorializing the election of the special officers to execute the mortgage assignment for Citi Residential on behalf of Ameriquest. Only the Beecroft mortgage and Ameriquest's assignment of the Beecroft mortgage to Deutsche Bank by

Ameriquest's attorney in fact are required to be recorded."); <u>Molde v. CitiMortgage, Inc.</u>, 781 N.W.2d 36, 43 (Minn. Ct. App. 2010) (holding that "a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement" need not be recorded in the tract index against the property); <u>Yang Mee Thao-Xiong</u>, 2013 WL 3788799, at *3 ("Moreover, there is no evidence that the assignment of the mortgage lacked proper authority under Minn. Stat. § 507.413.   In other words, the "strict compliance" standard applied by the Minnesota courts to the statutes governing foreclosures by advertisement extends only to the recording of mortgages, assignments of mortgages and the power to conduct foreclosure-related proceedings, and no more.")

Seventh, plaintiff's contention the foreclosure was invalid because that the October 12, 2012 Notice of Pendency, which was recorded before the date of the first publication of the Notice of Foreclosure, was invalid because there was no Power of Attorney filed authorizing Usset, Weingarden and Liebo to foreclose, (Pl. Opp. Mem., p. 17), is similarly without any legal support.

Plaintiff's argument regarding the application of Minn. Stat. §580.032, which requires the Notice of Pendency recorded before the date of the first publication of the foreclosure notice (but not more than six months before the date of the first publication), depends on this Court accepting her argument that the first Notice of Pendency was void because no power of attorney was filed contemporaneous or prior to the filing of the Notice of Pendency.  As noted above, that argument is meritless.  In any case, the Eighth Circuit's holding in <u>Badrawi</u> could not be clearer.  A plaintiff homeowner is "not among the class whose interests Minn. Stat. §580.032, subd. 3 was enacted to protect."

718 F.3d at 759.   Instead, the statute protects the interests of third parties with a redeemable interest in the property.   Id.

Plaintiff's attempt to invalidate the foreclosure by invoking various provisions of Minn. Stat. §582.25 also fails.   This statute does not describe the requirements of foreclosure-by-advertisement and does not describe causes of action.   Rather, this statute "operate[ ] to immunize foreclosure sales from certain types of challenges more than [a certain number of years] after the last day of the redemption period."   Stein v. Chase Bank, N.A., Civ. No. 10-203 (PJS/JSM), 2011 WL 882088, at 2 (D. Minn. Mar. 11, 2011).

Eighth, the Court rejects plaintiff's allegation that Wells Fargo lacked authority to foreclose because plaintiff "did not borrow money from any named defendant." Complaint, ¶5.   This allegation is nothing more than a variant of the completely discredited "show me the note" theory propounded in the past by plaintiff's former lawyer, Butler.   See, e.g., Butler v. Bank of America, N.A., 690 F.3d 959, 962 (8th Cir.2012) (the "show me the note" argument "is foreclosed by the plain language of Minnesota's foreclosure statute); Ebbighausen v. JP Morgan Chase Bank, N.A., Civ. No. 10–3120(JRT/LIB), 2013 WL 53836, at *7 (D. Minn. Jan. 3, 2013) ("the law of this Circuit clearly establishes that different entities can hold the promissory note and legal title to the mortgage, and that the holder of legal title to the mortgage need not possess the promissory note before it can institute foreclosure by advertisement.") (citing Stein v. Chase Home Fin. LLC, 662 F.3d 976, 979–980 (8th Cir. 2011) citing Jackson, 770 N.W.2d at 489–501)).

For all of these reasons, plaintiff's quiet title claim fails and should be dismissed.

B.     <u>Slander of Title</u>

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  <u>Paidar v. Hughes</u>, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).  To plead malice, a plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  <u>Dunbar</u>, 709 F.3d at 1258 (quoting <u>Brickner v. One Land Dev. Co.</u>, 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); <u>see</u> <u>also</u> <u>Quevli Farms, Inc. v. Union Sav. Bank & Trust Co.</u>, 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").  The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  <u>Kelly v. First State Bank of Rothsay</u>, 177 N.W. 347, 347 (Minn. 1920).  Additionally, plaintiff must establish that she relied on the alleged false statement.  <u>See</u> <u>Welk</u>, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiff alleged no facts from which this Court could infer that Wells Fargo made a false statement, acted maliciously or that plaintiff suffered any pecuniary loss from a publication concerning title to her property.  <u>See</u> <u>Ko v. Mortgage Electronic Registration Sytem</u>, Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *4 (D. Minn. Aug. 9, 2013)

(dismissing similarly-pled slander of title claim).   Therefore, plaintiff failed to state a claim for slander of title, and dismissal is required.[7]

### C.   Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[she is] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

---

[7]      The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094(SRN/JJG), 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Wells Fargo did not argue in favor of dismissal based on plaintiff's failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

Plaintiff's claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiff's suit be dismissed with prejudice.[8]

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.    Defendant's Motion to Dismiss [Docket No. 11] be **GRANTED.**

2.    This matter be dismissed with prejudice.

Dated:  June 23, 2014                    *Janie S. Mayeron*
                                         JANIE S. MAYERON
                                         United States Magistrate Judge

---

[8]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   Such is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

## **NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 14, 2014**,[9] a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[9]    The Court has allowed extra time for plaintiff to file her objections to this Report and Recommendation, as she is currently unrepresented by counsel.